IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARK W. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-1038 |
| | ) | |
| CITY OF DURHAM POLICE DEPARTMENT, PATRICE ANDREWS, POLICE CHIEF, in her individual and official capacity, GEORGE ZEIPEKKIS, CAPTAIN, in his individual and official capacity, and TYLER STEBBINS, OFFICER, in his individual and official capacity, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The plaintiff, Mark Brown, resigned from his job as a sergeant with the Durham Police Department immediately after learning that he "might possibly" face criminal charges for force he used during an arrest. He alleges that the defendants constructively discharged him in violation of federal and state law. Because Sergeant Brown has not alleged sufficient facts to support any of his claims, the defendants' motion to dismiss will be granted.

I. **Procedural History**

Sergeant Brown filed this suit in July 2023 in the Eastern District of North Carolina. Doc. 1; Doc. 11 (corrected complaint). He asserts claims against the defendants for discrimination and retaliation under Title VII and the Age Discrimination

in Employment Act (ADEA), for violations of the Equal Protection Clause and the First Amendment under 42 U.S.C. § 1983, and for wrongful discharge in violation of public policy. Doc. 11 at 3.

The defendants moved to transfer the case and separately moved to dismiss. Docs. 25, 27. The Eastern District transferred the case to this district in November 2023. Doc. 33. The motion to dismiss is fully briefed and ready for resolution.

## II. Facts Alleged in the Complaint

Sergeant Brown began working for the Durham Police Department in June 2004 and was promoted to Sergeant in 2021. Doc. 11-1 at ¶¶ 4, 7. In March 2022, he assisted with an arrest during which he put a "belligerent" suspect "in a head lock" in order to move the suspect into a holding cell. *Id.* at ¶¶ 9, 18–37. After the incident, one of the officers who assisted with the arrest, defendant Tyler Stebbins, falsely reported to another sergeant that Sergeant Brown had "used a chokehold" on the suspect. *Id.* at ¶¶ 37, 47–48.

That same day, an unidentified person told Sergeant Brown that he was being suspended and investigated for a use of force. *Id.* at ¶ 55. A captain in "internal investigations" told Sergeant Brown that he was on "administrative leave with pay for a use of force." *Id.* at ¶ 56.

The next day, several officers told Sergeant Brown that the police chief, defendant Patrice Andrews, "intended to terminate him." *Id.* at ¶ 60. In response, Sergeant Brown called an assistant chief and offered to retire "rather than resign or be fired." *Id.* at ¶ 61. After the assistant chief was "told to stay out of the matter," *id.* at ¶ 63, Sergeant Brown intended to retire and emailed a two-week notice of resignation to Chief Andrews,

defendant Captain George Zeipekkis, and a lieutenant. *Id.* at ¶¶ 64–65. Then a captain who served as the "liaison" between the city's human resources and police departments told Sergeant Brown that "Chief Andrews was refusing to accept his two-week resignation" and that the chief "might possibly have him charged with assault." *Id.* at ¶¶ 67–68. Because of the threat of arrest and investigation, Sergeant Brown submitted a letter of immediate resignation, *id.* at ¶¶ 71, 75; he did this only 25 minutes after he sent his initial resignation email giving two weeks' notice. *Id.* at ¶¶ 65, 71. As a result of this "forced resignation," he was "denied . . . the ability to retire." *Id.* at ¶ 76.

Additional factual allegations will be discussed in connection with specific issues.

### III. Defendant City of Durham Police Department

The caption of the complaint lists the "City of Durham Police Department" as a defendant. Doc. 11 at 1. As the defendants point out, this is not a proper defendant. *See, e.g., Cates v. Sandoval*, No. 20-CV-200, 2020 WL 5665537, at *7 (M.D.N.C. Sept. 23, 2020). Sergeant Brown says he meant to sue the City of Durham, Doc. 31 at 8, and in the text of the complaint he does list "City of Durham" as "Defendant No. 1." Doc. 11 at 2.

To the extent amendment is necessary, it would be futile because Sergeant Brown has failed to state a claim against the City of Durham. *See* discussion *infra*. In this order, the Court will refer to this defendant as the City of Durham, or the city, for simplicity.

### IV. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

3

(2007)).  Courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor.  *See Twombly*, 550 U.S. at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  But courts are not required to "accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'"  *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  A Rule 12(b)(6) motion to dismiss "tests the sufficiency of a complaint," *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)), and the Court's "evaluation is thus generally limited to a review of the allegations of the complaint itself," plus any documents attached to the complaint as exhibits.  *Id.* at 165–66; *see also* Fed. R. Civ. P. 10(c).

V.     **ADEA Claim**

Thought counsel, Sergeant Brown filed suit on a form complaint for employment discrimination apparently in use by the Eastern District of North Carolina.  *See* Doc. 11 at 1.  He checked the box in the "Basis for Jurisdiction" section indicating he was relying on the Age Discrimination in Employment Act, among other statutes.  *Id.* at 3.  But in the section entitled "Statement of Claim," he did not check the box for discrimination on the basis of age.  *Id.* at 4.

As the defendants point out, Doc. 28 at 12–13, there are no allegations of discrimination based on age in the exhibit containing Sergeant Brown's factual allegations.  *See* Doc. 11-1.  And in his brief in opposition to the motion to dismiss, he

4

did not respond to the defendants' argument for dismissal of the age discrimination claim or contend that he has brought such a claim. *See* Doc. 31 at 1.[1]

To the extent the complaint can be read as asserting an age discrimination claim under the ADEA, the defendants' motion will be granted. That claim will be dismissed.

## VI. Title VII Claims

Sergeant Brown brings claims under Title VII for discrimination on the basis of race and sex and for retaliation. Doc. 11 at 3–4; *see* Doc. 31 at 1. The defendants move to dismiss.

### A. Individual Defendants

Title VII does not provide a cause of action against co-employees or supervisors; the cause of action is against the employer. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998). To the extent the complaint can be read to assert Title VII claims against the individual defendants in their individual capacities, those claims will be dismissed. And to the extent the complaint can be read to assert Title VII claims against the individual defendants in their official capacities, those claims are duplicative of the claims against the City of Durham and will be dismissed. *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) (collecting cases); *see also*

---

[1] If a non-moving party does not defend against an argument, it has waived any right to contest the moving party's contention in this regard. *See Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 639 n.7 (M.D.N.C. 2017) (citing *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012)). But even an unopposed motion to dismiss must be supported by the record, and the court "has an obligation to review [an unopposed motion] to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

*Khazanie v. Univ. of N.C. at Chapel Hill*, No. 20-CV-1096, 2021 WL 5235296, at *4 (M.D.N.C. Nov. 10, 2021).  This leaves Title VII claims against the City of Durham.

### B. Discrimination

For Sergeant Brown's Title VII discrimination claims to proceed, he must allege facts allowing for a reasonable inference that the city discriminated against him "with respect to his . . . terms, conditions, or privileges of employment, because of [his] . . . race [or] sex."  42 U.S.C. § 2000e-2(a)(1).  But beyond a conclusory assertion of discrimination, Doc. 11 at 4, Sergeant Brown includes no factual allegations tending to indicate that anyone involved in decision-making made any comments about his race or sex, referred to his race or sex, or took race or sex into account in making any employment decision.  *See* Doc. 11-1.

Sergeant Brown, a white male, points to allegations of four "comparators," Doc. 31 at 13–15, but those comparators are all male, and three of the four are white.  Doc. 11-1 at ¶¶ 129–132.[2]  Only one of the comparators was involved in an alleged use of force, and that comparator was a white male.  *Id.* at ¶ 132.  Nothing in these allegations gives rise to a plausible inference of discrimination.

Simply invoking the words "discrimination," "comparator," or "Title VII" does not state a claim.  There must be some factual allegations tending to directly or indirectly

---

[2] The only reason the court knows Sgt. Brown's race and sex is because he included that information in the EEOC charge attached to the complaint.  *See* Doc. 11-2.  There, he states that he is a white male.  *Id.* at 1.  Sgt. Brown does not directly state the race and sex of the comparators, but the Court assumes that "W/M" and "B/M" signify "White Male" and "Black Male" respectively.  *See* Doc. 11-1 at ¶¶ 129–132.

6

indicate that race or sex had something to do with the way Sergeant Brown was treated by the city or with his termination. But there are no such allegations and no plausible inference that Sergeant Brown was treated differently because of his race or sex. His Title VII discrimination claims will be dismissed.

### C. Retaliation

To plead a Title VII retaliation claim, "the complaint must allege facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff because of the plaintiff's protected activity." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (cleaned up) (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)). An act is a protected activity when it involves "participating in a Title VII proceeding or opposing an employer's discriminatory practices." *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (quoting *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019)); *see* 42 U.S.C. § 2000e-3(a).

Sergeant Brown alleges that his supervisor, Captain Zeipekkis, "had a grudge against Sgt. Brown due to being named in previous EEOC charges filed by Sgt. Brown." Doc. 11-1 at ¶¶ 104–105. Sergeant Brown also alleges that he "made past EEOC complaints about a supervisor that had groped other officers, including Sgt. Brown." *Id.* at ¶ 108. He does not allege when he filed these EEOC charges.

Filing an EEOC charge is a protected activity, *see Holloway*, 32 F.4th at 300, but there must be facts alleged which allow a plausible inference that the filing of the EEOC charge caused the adverse employment action. *See Barbour*, 105 F.4th at 590. To establish a causal connection, a plaintiff may either point to facts that "suggest[] that the

7

adverse employment action occurred because of the protected activity" or "establish that the adverse act bears sufficient temporal proximity to the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021).

Sergeant Brown has done neither. He does not say when he made the EEOC charges, nor does he allege any facts that suggest his constructive discharge had any connection to his protected activity. While a plaintiff does not have to prove his case in the complaint, there must be something beyond a bare assertion of causation. Here, there is nothing tending to link his past EEOC charges to his alleged constructive discharge. And while Sergeant Brown alleges that he made a number of other complaints and criticisms of the defendants, none were about discrimination. *See, e.g.*, Doc. 11-1 at ¶¶ 78, 81. 121. His Title VII retaliation claim will be dismissed.

## VII. Section 1983 Claims

Sergeant Brown brings claims under 42 U.S.C. § 1983 for discrimination in violation of the Equal Protection Clause and for retaliation in violation of the First Amendment. Doc. 11 at 3; *see* Doc. 31 at 1.

As with the Title VII claims, to the extent the complaint can be read to assert these § 1983 claims against the individual defendants in their official capacities, those claims are duplicative of the claims against the City of Durham. *See Armstrong*, 190 F. Supp. 3d at 463. Those claims will be dismissed.

### A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1.³ "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *accord English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024). Equal protection claims usually address "governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (cleaned up) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). Some plaintiffs can support an equal protection claim with allegations that they were "irrationally singled out as a so-called 'class of one.'" *Id.* But "in the public employment context," as here, "the class-of-one theory of equal protection does not apply." *Id.* at 598.

As discussed *supra*, Sergeant Brown's allegations about race or sex are conclusory, and his allegations of comparators are not sufficient to support an inference that he was treated differently on the basis of his race or sex. And he cannot rely on the "class of one" theory. *See id.* His equal protection claim will be dismissed.

### B. First Amendment Retaliation

For a public employee to state a First Amendment claim for retaliatory discharge, he must allege that: (1) he "was speaking as a citizen upon a matter of public concern," (2) his "'interest in speaking . . . outweighed the government's interest' in managing the working environment," and (3) his "speech was a substantial factor in [his] termination

---

³ Sgt. Brown says his equal protection claim arises under the Fifth Amendment, Doc. 31 at 1, but because his employer was a municipality, the claim arises under the Fourteenth Amendment.

decision." *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)). "It is not enough that the protected expression played a role or was a motivating factor in the retaliation; [the employee] must show that 'but for' the protected expression the state actor would not have taken the alleged retaliatory action." *Porter v. Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 583 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) (cleaned up) (quoting *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015)). "Though not necessarily required, temporal proximity may create the inference of causation," and if "a plaintiff rests his case on temporal proximity alone, the temporal proximity must be very close." *Id.* at 582–83 (quoting *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017)).

Sergeant Brown alleges that Officer Stebbins, Captain Zeipekkis, and Chief Andrews held grudges against him because of his past criticisms of their workplace conduct.[4] He alleges that all three acted as a result of these grudges: Officer Stebbins in

---

[4] According to the complaint:

(1) Officer Stebbins held a grudge because Sergeant Brown told "officers under his command to notify him immediately if Stebbins went on any call" similar to a June 2020 incident in which Officer Stebbins "pointed weapons at children playing." Doc. 11-1 at ¶¶ 77–78. Sergeant Brown's directive occurred at an unspecified time after that incident. *Id.* at ¶ 78.

(2) Captain Zeipekkis held a grudge because: (a) in late April and early May 2020, Sergeant Brown complained to internal affairs about Captain Zeipekkis's decisions during the early pandemic related to "workplace safety" and "faulty thermometers," *see, e.g., id.* at ¶¶ 81–99, 106; and (b) Captain Zeipekkis was "named in previous EEOC charges filed by Sgt. Brown." *Id.* at ¶¶ 105.

(3) Chief Andrews held a grudge because Sergeant Brown criticized her in May 2011 for an alleged "intimate relationship" with other employees. *Id.* at ¶¶ 113, 118–121.

10

making a false report that Sergeant Brown had used a chokehold, Doc. 11-1 at ¶¶ 80, 140, Captain Zeipekkis in passing on the report to his supervisor Chief Andrews, *id.* at ¶¶ 112, 140, and Chief Andrews in relying on those reports. *Id.* at ¶ 140. Sergeant Brown also alleges that he was forced to resign because of a threat of arrest "in retaliation for his opposing improper practices by Chief Patrice Andrews." *Id.* at ¶ 76.

Arguably, Sergeant Brown's allegations about Officer Stebbins support an inference that he would not have made the chokehold report but for Sergeant Brown's criticism of him. But that does not state a claim for retaliatory discharge as it is clear from the allegations that Officer Stebbins was not involved in any decisions to begin an investigation, impose discipline, initiate criminal charges, or affect Sergeant Brown's employment status. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)) ("Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.").

Sergeant Brown alleges Captain Zeipekkis sent the chokehold report up the chain of command, but he does not allege that Captain Zeipekkis had any other involvement. Doc. 11-1 at ¶ 112. His criticisms of Captain Zeipekkis occurred more than a year before this incident, a period too long on which to rest an inference that Captain Zeipekkis forwarded the report in retaliation. *See Penley*, 876 F.3d at 657 (holding that "eight to nine months is too distant to raise an inference of causation").

11

As to Chief Andrews, Sergeant Brown variously alleges that the threat of arrest was in retaliation for opposing her "improper practices" and that she "wanted to get rid of [him] for maybe the same or maybe different reasons" as the other defendants. Doc. 11-1 at ¶¶ 76, 140. These vague, inconsistent allegations, coupled with the more than ten years between his criticism of her and the alleged threat of arrest, are not sufficient to support an inference that Chief Andrews would have acted differently but for his criticism.

Finally, to the extent the complaint can be read to assert a First Amendment claim against the City of Durham, Sergeant Brown has not alleged facts tending to indicate the existence of a governmental policy or custom, as is required for municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Even if the police chief is a policymaker, *see Howard v. City of Durham*, 68 F.4th 934, 953–54 (4th Cir. 2023), Sergeant Brown's allegations as to her actions are insufficient, as discussed *supra*.

Sergeant Brown has not stated a claim against any of the defendants for First Amendment retaliation. His First Amendment claim will be dismissed.

### VIII. Wrongful Discharge in Violation of Public Policy

Under North Carolina law, individuals are not employers and cannot be held liable for wrongful discharge. *See McAdams v. N.C. Dep't of Com., Div. of Emp. Sec.*, No. COA16-196, 2016 WL 7100566, at *4 (N.C. Ct. App. Dec. 6, 2016); *see also Hilderbrand v. Pelham Transp. Corp.*, No. 20-CV-1020, 2021 WL 2681966, at *5 (M.D.N.C. June 30, 2021) (collecting cases). To the extent the complaint can be read to

assert a wrongful discharge claim against the individual defendants, those claims are dismissed.

The city asserts that sovereign immunity protects it from Sergeant Brown's wrongful discharge claim. Doc. 28 at 18–19. "[S]overeign immunity shields the State, its agencies, and officials sued in their official capacities from suit on state law claims unless the State consents to suit or waives its right to sovereign immunity." *Hinson v. City of Greensboro*, 232 N.C. App. 204, 210, 753 S.E.2d 822, 827 (2014) (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 480, 574 S.E.2d 76, 91 (2002)). A governmental entity may waive its "immunity to the extent it has purchased liability insurance." *Meinck v. City of Gastonia*, 263 N.C. App. 414, 417, 823 S.E.2d 459, 462 (2019) (quoting *Hart v. Brienza*, 246 N.C. App. 426, 433, 784 S.E.2d 211, 216 (2016)). But "[i]n order to overcome a defense of sovereign immunity, the complaint must specifically allege a waiver of sovereign immunity. Absent such an allegation, the complaint fails to state a cause of action." *Hinson*, 232 N.C. App. at 210 (cleaned up) (quoting *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010)); *accord Davis v. Blanchard*, 175 F. Supp. 3d 581, 601 (M.D.N.C. 2016).

In his brief in opposition to the motion to dismiss, Sergeant Brown mentions that immunity is waived by purchase of insurance, Doc. 31 at 25, but he does not contend or point to any allegations in the complaint that the city purchased insurance or has otherwise waived immunity, and the Court sees no such allegations. *See* Doc. 11-1. Because Sergeant Brown has not alleged a waiver of sovereign immunity, the wrongful discharge claim will be dismissed.

13

Even if sovereign immunity did not bar the wrongful discharge claim, Sergeant Brown has failed to allege facts making this claim plausible. "To state a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that her dismissal occurred for a reason that violates public policy." *Wilkes v. Argueta*, No. 16-CV-260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (cleaned up) (quoting *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003)).[5]

In his brief in opposition to the motion to dismiss, Sergeant Brown points to public policies against extortion and "in favor of the protection of those who have complained about governmental wrongdoing." Doc. 31 at 20–23. Assuming without deciding that these are public policies of North Carolina, Sergeant Brown has not sufficiently alleged that his constructive discharge was a result of either one.

Sergeant Brown alleges that he chose to resign immediately after a captain told him that Chief Andrews "might possibly have him charged with assault." Doc. 11-1 at ¶ 67. That statement does not rise to the level of extortion. And as discussed *supra* in relation to his First Amendment claim, Sergeant Brown has not alleged facts sufficient to support an inference that the city retaliated against him for his complaints, even if those criticisms were "about governmental wrongdoing." *See* Doc. 31 at 22.

---

[5] It is questionable that North Carolina "recognize[s] a claim for wrongful constructive discharge in violation of public policy." *See Hoyle v. Cumberland Cnty. Hosp. Sys., Inc.*, No. 24-CV-65, 2025 WL 747504, at *12 (E.D.N.C. Mar. 7, 2025) (collecting cases). But the defendants did not raise this argument.

14

Sergeant Brown's allegations are insufficient to state a claim for wrongful discharge in violation of public policy.

It is **ORDERED** that the defendants' motion to dismiss, Doc. 27, is **GRANTED**. Judgment will be entered separately as time permits.

This the 13th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE